U.S. DISTRICT COURT
EASTERN DISTRICT
FILED

2014 JAN 30 P 3 52

JON W. SANFILIPPO
CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

        Plaintiff,

v.                         Case No. 14-CR012

SUNDAY UWUBITI,

        Defendant.

---

## PLEA AGREEMENT

---

1.    The United States of America, by its attorneys, James L. Santelle, United States Attorney for the Eastern District of Wisconsin, and Matthew L. Jacobs, Assistant United States Attorney, and the defendant, Sunday Uwubiti, individually and by his attorney, Franklyn M. Gimbel, pursuant to Rule 11 of the Federal Rules of Criminal Procedure, enter into the following plea agreement:

### CHARGES

2.    The defendant will be charged in a two-count criminal information that will be filed in conjunction with this plea agreement. The information charges the defendant with two counts of aiding and assisting in the filing of false federal income tax returns, in violation of Title 26, United States Code, Section 7206(2).

3.    The defendant has read and fully understands the charges contained in the information and fully understands the nature and elements of the crimes with which he has been

charged. Further, these charges and the terms and conditions of the plea agreement have been fully explained to him by his attorney.

4. The defendant voluntarily agrees to waive in open court his right to have this matter prosecuted by indictment.

5. The defendant voluntarily agrees to plead guilty to the charges contained in the information, which are set forth below.

## THE UNITED STATES ATTORNEY CHARGES:

1. At all times material, the defendant, Sunday Uwubiti ("Uwubiti"), resided in Milwaukee, Wisconsin and operated a tax return preparation business using the name Trustee Tax Service.

2. During the period from approximately January 2010 through April 2011, Uwubiti, and others employed and supervised by Uwubiti at Trustee Tax Service, prepared and filed false and fraudulent federal income tax returns for third parties. These returns, the majority of which were electronically filed with the Internal Revenue Service ("IRS"), sought income tax refunds to which the taxpayers were not entitled.

3. To obtain these refunds, the returns falsely reflected that the taxpayers operated businesses from which they received income. Based on this income, and the fact that the taxpayers had one or more qualifying dependents, the returns claimed that the taxpayers were eligible for one or more tax credits, including Earned Income Credit, Additional Child Tax Credit, Making Work Pay Credit, and American Opportunity Credit and that, as a result, the taxpayer was entitled to a tax refund.

4. During the period from January 2010 through April 2011, Uwubiti, and others employed and supervised by Uwubiti at Trustee Tax Service, filed with the IRS at least 99 false and fraudulent income tax returns fraudulently seeking more than $448,000 in federal income tax refunds.

5. On or about the dates indicated below, in the State and Eastern District of Wisconsin and elsewhere,

### SUNDAY UWUBITI

2

did willfully aid and assist in, and procure, counsel, and advise the preparation and presentation to the Internal Revenue Service, of U.S. Individual Income Tax Returns, Forms 1040, for the indicated taxpayers for the calendar year 2010, which returns Uwubiti knew were false and fraudulent in the following respects:

    a. The return represented that the taxpayer operated a business and included a Schedule C, Profit and Loss from Business, indicating the gross receipts, expenses, and net income for the purported business when, in fact, as Uwubiti well knew, the taxpayer did not operate a business during 2010 and, therefore, did not have gross receipts, expenses, and income from such business in the amounts stated;

    b. Based on the reported business income, and the fact that the taxpayer had three qualifying dependents, the return indicated that the taxpayer was eligible for tax credits, including an Earned Income Credit, a Making Work Pay Credit, and an Additional Child Tax Credit, in the total amount stated below, when, in fact, as Uwubiti well knew, the taxpayer was not entitled to the tax credits in the amounts claimed; and

    c. Based on the false tax credits, the return indicated that the taxpayer was entitled to a tax refund in the amount indicated below, when, in fact, as Uwubiti well knew, the taxpayer was not entitled to a tax refund in the amount claimed.

| Count | Date of Offense | Taxpayer initials | Tax credits claimed | Refund claimed |
|---|---|---|---|---|
| 1 | April 15, 2011 | N.M. | $7,664 | $5,589 |
| 2 | April 15, 2011 | K.T. | $7,522 | $5,591 |

All in violation of Title 26, United States Code, Section 7206(2).

6. The defendant acknowledges, understands, and agrees that he is, in fact, guilty of the offenses charged in the information. The parties acknowledge and understand that, if this case were to proceed to trial, the government would be able to prove the following facts beyond

3

a reasonable doubt. The defendant admits to the following facts and that these facts establish his guilt beyond a reasonable doubt:

*Background*

At all times relevant to this case and, in particular, during period from 2007 through April 2011, the defendant Sunday Uwubiti ("Uwubiti") was the sole owner and operator of Trustee Tax Service, which was located at 6114 W. Capital Drive, Milwaukee, Wisconsin.

Through Trustee Tax Service, Uwubiti, and others hired, trained, and supervised by Uwubiti, assisted individuals in the preparation and filing of federal income tax returns. The vast majority of the returns prepared by Uwubiti and Trust Tax Service were electronically filed with the Internal Revenue Service ("IRS"). According to IRS records, Trustee Tax Service electronically filed 36 individual income tax returns (Forms 1040) for the year 2007 and 31 tax returns for 2008, which were filed in 2008 and 2009, respectively.

According to IRS records, Trustee Tax Service filed 85 individual income tax returns for the year 2009. These returns indicate that 58 were prepared by Uwubiti and the remaining 27 were prepared by A.M., an employee of Trustee Tax Service. All of the returns, which were filed in 2010, were electronically filed with the IRS. All of these returns sought a tax refund based on a claimed eligibility for the Earned Income Credit ("EIC") and the Additional Child Tax Credit ("ACTC"). In addition, all 85 returns reported earned income from self-employment on a Schedule C, Profit and Loss from Business, accompanying the return. Based on these returns, the IRS issued tax refunds totaling $115,507.

A further analysis of the 85 returns filed for 2009, revealed that 71 of the returns reported earned income between $8,950 and $16,450, which made the taxpayer eligible for the maximum EIC available. The majority of the returns reflected the taxpayer's occupation was "hair braiding," "hair stylist," or "barber," and the address for the business was the same as the taxpayer's home address.

IRS records reflect that in 2011, Trustee Tax Service filed 804 individual income tax returns with the IRS seeking a total of $3.4 million in tax refunds. Of these returns, 655 included a Schedule C, most of which reported a business occupation of "hair braiding," "hair stylist," "barber," "nail technician," "entertainer," or "cleaner" with a business address of the taxpayer's residence.

4

Case 2:14-cr-00012-RTR   Filed 01/30/14   Page 4 of 17   Document 2

Similar to the returns filed for 2009, 90% of the 2010 tax returns that included a Schedule C (593 out of 655) reported earned income between $8,950 and $16,450, which made the taxpayer eligible for the maximum EIC. At least 18 of these returns also included a fraudulent Form 8863, falsely claiming an American Opportunity Credit between $900 and $1000 each. In addition, at least 13 included a Schedule M claiming a Making Work Pay Credit of $400.

Finally, of the 593 returns that included a Schedule C, Uwubiti was indicated as the preparer on 344 returns. The remaining returns indicate that the return was prepared by the following employees of Trustee Tax Service: L.B. (107 returns), S.D. (106 returns), K.J. (35 returns), and A.M. (1 return).

*Undercover investigation*

Based on this information, in March 2011, the IRS initiated an undercover operation in which a federal agent (T.R.) posed as a prospective customer and visited Trustee Tax Service seeking to have her 2010 tax return prepared. T.R. met with Uwubiti and represented that she had a W-2 for 2010 reflecting income of $835. Uwubiti told T.R. that if she filed self-employment with two dependents she could receive an earned income credit of at least $5,000. Uwubiti stated "You can say maybe you braid hair, or maybe, you know, make, you know like $7,000 last year braiding hair. So that will give you more income. That's why they call it earned income credit."

Uwubiti initially prepared a tax return for T.R. using only the W-2 T.R. provided, which reflected income of $835, and reflecting that T.R. had two dependents. Uwubiti told T.R. that this resulted in a tax refund of only $473.

Uwubiti then prepared a tax return for T.R. that included a Schedule C reporting net income from a fictitious hair styling business of $13,446. This return claimed an earned income credit of $5,036, an additional child tax credit of $1,500, and a tax refund of $5,177.

*Search warrant*

On April 18, 2011, federal agent executed a search warrant at Trustee Tax Service and seized client files associated with the suspect tax returns filed for the years under investigation. The files typically contained tax forms associated with the returns that had been filed with the IRS, a copy of the taxpayer's driver's license or other identification card, and the taxpayer's social security card. Many of the files also contained a preprinted document entitled "Self-Employment Income Verification Form." Most of the forms, which were generally signed

5

by the taxpayer, contained handwritten notations indicating the amounts of income and expenses (typically advertising and supplies) that had been reported on the taxpayer's return.

*Taxpayer interviews*

Federal agents located and interviewed 79 individuals whose 2009 and/or 2010 tax return had been prepared by Trustee Tax Service and filed with the IRS. Virtually all of the individuals interviewed indicated that the returns, all of which included a Schedule C reporting income from a business, contained false information about the income and expenses from the business. According to the individuals, Uwubiti and/or another employee at Trustee Tax Service made up the business name, as well as the business income and expenses reported on the returns.

When shown the Self-Employment Verification Form contained in their file located at Trustee Tax Service, most of the taxpayers acknowledged signing the form but indicated that the information was false and denied writing the handwritten notations or providing the information. Many of the taxpayers stated that when they had signed the form it was blank.

The taxpayers indicated they paid Uwubiti a fee of approximately $300 to prepare their return and that the fee was taken directly from their refund. Several of the taxpayers also indicated that Uwubiti paid them a fee (typically $35 to $50) to refer other individuals to have Uwubiti prepare their tax returns.

Of the 79 individuals interviewed, the IRS identified a total of 99 tax returns associated with these individuals that had been prepared by Uwubiti, or an employee of Trustee Tax Service, and filed with the IRS. These returns, all of which contained false information, fraudulently sought federal income tax refunds totaling more than $448,000.

*Specific charges*

**Count One** of the information is based on a 2010 U.S. Individual Income Tax Return (Form 1040) that was filed with the IRS in the name of N.M., who resided in Milwaukee, Wisconsin. The return was filed with the IRS prior to the due date and, therefore, is treated as having been filed with the IRS on April 15, 2011. The return indicates that it was prepared by Uwubiti on behalf of Trustee Tax Service.

The return, which indicates N.M.'s occupation as "hair braiding," includes a Schedule C indicating that during 2010, N.M. operated a sole proprietorship that had gross receipts $15,875, advertising expenses of $289, expenses for supplies of $897, and net business income of $14,689. Based on this income, and the fact that N.M. had three qualifying dependents, the

6

return indicates that N.M. was eligible for an earned income credit of $5,666, an additional child tax credit of $1,598, a Making Work Pay Credit of $400, and a net tax refund of $5,589.

When interviewed, N.M. indicated that she did not operate a business during 2010 and had not worked at all in 2010. N.M. indicated that she went to Trustee Tax Service on the advice of a friend and met with Uwubiti. According to N.M., after she told Uwubiti that she had not worked in 2010, he told her "I'm gonna hook you up." Uwubiti then made up the business, as well as the income and expenses reported on N.M.'s 2010 tax return. N.M. paid Uwubiti a fee of $320 that was deducted from N.M.'s refund.

**Count Two** of the information is based on a 2010 U.S. Individual Income Tax Return (Form 1040) that was filed with the IRS in the name of K.T., who resided in Milwaukee, Wisconsin. The return was filed with the IRS prior to the due date and, therefore, is treated as having been filed with the IRS on April 15, 2011. The return indicates that it was prepared by Uwubiti on behalf of Trustee Tax Service.

The return, which indicates K.T.'s occupation as "hair braiding," includes a Schedule C indicating that during 2010, K.T. operated a sole proprietorship that had gross receipts $14,578, advertising expenses of $319, expenses for supplies of $589, and net business income of $13,670. Based on this income and the fact that K.T. had three qualifying dependents, the return indicates that K.T. was eligible for an earned income credit of $5,666, an additional child tax credit of $1,456, a Making Work Pay Credit of $400, and a net tax refund of $5,591.

When interviewed, K.T. stated that Uwubiti prepared her return, that she was not employed during 2010, and that her only income during 2010 was from Social Security Supplemental Income. According to K.T., Uwubiti made up the name of her purported business, as well as the income and expenses reported on the return. K.T. acknowledged signing a Self-Employment Income Verification Form but indicated when she signed it, the form was blank and the handwritten amounts listed on the form for income and expenses are not in her handwriting. K.T. admitted knowing that filing the false return was not right but did it because it was an easy way to get money from the government.

Uwubiti also prepared a state income tax return for K.T. According to K.T., after she was contacted by the state about her return, she contacted Uwubiti about how to respond. Uwubiti told K.T. to "make something up" but she never contacted the state.

7

This information is provided for the purpose of setting forth a factual basis for the defendant's pleas of guilty. It is not a full recitation of the defendant's knowledge of or participation in these offenses.

## PENALTIES

7. The parties understand and agree that the offenses to which the defendant will plead guilty each carry the following maximum term of imprisonment and fine: Three (3) years and $250,000. The charges also carry a mandatory special assessment of $100.00, and a maximum of one year of supervised release to follow any term of confinement.

8. The defendant acknowledges, understands, and agrees that he has discussed the relevant statutes, as well as the applicable sentencing guidelines, with his attorney.

## ELEMENTS

9. The parties understand and agree that to sustain the charges of aiding and assisting in the filing of false federal income tax returns, in violation of 26 U.S.C. § 7206(2), as set forth in both counts of the information, the government must prove each of the following propositions beyond a reasonable doubt:

> First, the defendant aided, assisted in, counseled or advised the preparation of an income tax return that was false as to a material matter. There must be some affirmative participation which at least encourages the perpetrator. The return must be filed with the Internal Revenue Service; and
>
> Second, the defendant knew that the income tax return was false, that is, that the income tax return was untrue when it was made; and
>
> Third, the defendant acted willfully, that is, with the intent to violate the law.

8

## SENTENCING PROVISIONS

10. The parties agree to waive the time limits in Fed. R. Crim. P. 32 relating to the presentence report, including that the presentence report be disclosed not less than 35 days before the sentencing hearing, in favor of a schedule for disclosure, and the filing of any objections, to be established by the court at the change of plea hearing.

11. The parties acknowledge, understand, and agree that any sentence imposed by the court will be pursuant to the Sentencing Reform Act, and that the court will give due regard to the Sentencing Guidelines when sentencing the defendant.

12. The parties acknowledge and agree that they have discussed all of the sentencing guidelines provisions that they believe to be applicable to the offenses charged in the information. The defendant acknowledges and agrees that his attorney, in turn, has discussed the applicable sentencing guidelines provisions with him to the defendant's satisfaction.

13. The parties acknowledge and understand that, prior to sentencing, the United States Probation Office will conduct its own investigation of the defendant's criminal history. The parties further acknowledge and understand that, at the time the defendant enters a guilty plea, the parties may not have full and complete information regarding the defendant's criminal history. The parties acknowledge, understand, and agree that the defendant may not move to withdraw his guilty plea solely as a result of the sentencing court's determination of defendant's criminal history.

## Sentencing Guidelines Calculations

14. The parties acknowledge, understand, and agree that the sentencing guidelines calculations included in this agreement represent the positions of the parties on the appropriate sentence range under the sentencing guidelines. The defendant acknowledges and understands that the sentencing guidelines recommendations contained in this agreement do not create any right to be sentenced within any particular sentence range, and that the court may impose a reasonable sentence above or below the guideline range. The parties further understand and agree that if the defendant has provided false, incomplete, or inaccurate information that affects the calculations, the government is not bound to make the recommendations contained in this agreement.

## Relevant Conduct

15. The parties acknowledge, understand, and agree that pursuant to Sentencing Guidelines Manual § 1B1.3, the sentencing judge may consider relevant conduct in calculating the sentencing guidelines range, even if the relevant conduct is not the subject of the offense to which the defendant is pleading guilty.

16. The parties acknowledge, understand, and agree that pursuant to Sentencing Guidelines Manual §§ 2T1.1 and 1B1.3(a)(2), the sentencing court will consider all conduct violating the tax laws unless the evidence demonstrates that the conduct is clearly unrelated, even if the relevant conduct is not the subject of the offenses to which defendant is pleading guilty, and will use the total amount in calculating the sentencing guidelines range.

17. For purposes of determining the defendant's offense level under the sentencing guidelines, the parties agree that the tax loss associated with the defendant's criminal conduct is more than $400,000 but less than $1 million.

10

### Base Offense Level

18. Based on their position that the tax loss applicable to the defendant's conduct is more than $400,000 but less than $1 million, the parties agree to recommend to the sentencing court that the applicable base offense level for the offenses to which the defendant will plead guilty is 20, as determined under Sentencing Guidelines Manual §§ 2T1.4(a)(1) and 2T4.1(H).

### Specific Offense Characteristics

19. The parties agree to recommend to the sentencing court that the defendant's offense level should be increased 2 levels under Sentencing Gridlines Manual § 2T1.4(b)(1) because the defendant was in the business of preparing or assisting in the preparation of tax returns and the defendant committed the offenses as part of a pattern or scheme from which he derived a substantial portion of his income.

### Acceptance of Responsibility

20. The government agrees to recommend a two-level decrease for acceptance of responsibility as authorized by Sentencing Guidelines Manual § 3E1.1(a), but only if the defendant exhibits conduct consistent with the acceptance of responsibility. In addition, if the court determines at the time of sentencing that the defendant is entitled to the two-level reduction under § 3E1.1(a), the government agrees to make a motion recommending an additional one-level decrease as authorized by Sentencing Guidelines Manual § 3E1.1(b) because the defendant timely notified authorities of his intention to enter a plea of guilty.

### Sentencing Recommendations

21. Both parties reserve the right to apprise the district court and the probation office of any and all information that might be pertinent to the sentencing process, including but not

limited to any and all conduct related to the offense, as well as any and all matters that might constitute aggravating or mitigating sentencing factors.

22. The government agrees to recommend a sentence no greater than the low end of the applicable sentencing guideline range, as determined by the court. Recognizing that the Sentencing Guidelines are advisory, the defendant has reserved the right to argue for a sentence below the applicable sentencing guideline range.

## Court's Determinations at Sentencing

23. The parties acknowledge, understand, and agree that neither the sentencing court nor the United States Probation Office is a party to or bound by this agreement. The United States Probation Office will make its own recommendations to the sentencing court. The sentencing court will make its own determinations regarding any and all issues relating to the imposition of sentence and may impose any sentence authorized by law up to the maximum penalties set forth in paragraph 7 above. The parties further understand that the sentencing court will be guided by the sentencing guidelines but will not be bound by the sentencing guidelines and may impose a reasonable sentence above or below the calculated guideline range.

24. The parties acknowledge, understand, and agree that the defendant may not move to withdraw his guilty plea solely as a result of the sentence imposed by the court.

## FINANCIAL MATTERS

25. The defendant acknowledges and understands that any and all financial obligations imposed by the sentencing court are due and payable upon entry of the judgment of conviction. The defendant agrees not to request any delay or stay in payment of any and all financial obligations.

### Special Assessment

26. The defendant agrees to pay the special assessments in the amount of $200 prior to or at the time of sentencing.

## DEFENDANT'S WAIVER OF RIGHTS

27. In entering this agreement, the defendant acknowledges and understands that in so doing he surrenders any claims he may have raised in any pretrial motion, as well as certain rights which include the following:

   a. If the defendant persisted in a plea of not guilty to the charges against him, he would be entitled to a speedy and public trial by a court or jury. The defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, the defendant, the government and the judge all must agree that the trial be conducted by the judge without a jury.

   b. If the trial is a jury trial, the jury would be composed of twelve citizens selected at random. The defendant and his attorney would have a say in who the jurors would be by removing prospective jurors for cause where actual bias or other disqualification is shown, or without cause by exercising peremptory challenges. The jury would have to agree unanimously before it could return a verdict of guilty. The court would instruct the jury that the defendant is presumed innocent until such time, if ever, as the government establishes guilt by competent evidence to the satisfaction of the jury beyond a reasonable doubt.

      c.      If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all of the evidence, whether or not he was persuaded of defendant's guilt beyond a reasonable doubt.

      d.      At such trial, whether by a judge or a jury, the government would be required to present witnesses and other evidence against the defendant. The defendant would be able to confront witnesses upon whose testimony the government is relying to obtain a conviction and he would have the right to cross-examine those witnesses. In turn the defendant could, but is not obligated to, present witnesses and other evidence on his own behalf. The defendant would be entitled to compulsory process to call witnesses.

      e.      At such trial, defendant would have a privilege against self-incrimination so that he could decline to testify and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify on his own behalf.

28.    The defendant acknowledges and understands that by pleading guilty he is waiving all the rights set forth above. The defendant further acknowledges the fact that his attorney has explained these rights to him and the consequences of his waiver of these rights.

29.    The defendant acknowledges and understands that he will be adjudicated guilty of the offenses to which he will plead guilty and thereby may be deprived of certain rights, including but not limited to the right to vote, to hold public office, to serve on a jury, to possess firearms, and to be employed by a federally insured financial institution.

30.    The defendant knowingly and voluntarily waives all claims he may have based upon the Speedy Trial Act, and the speedy trial provisions of the Sixth Amendment. The defendant agrees that any delay between the filing of this agreement and the entry of the defendant's guilty plea pursuant to this agreement constitutes excludable time under the Speedy Trial Act.

14

Case 2:14-cr-00012-RTR   Filed 01/30/14   Page 14 of 17   Document 2

### Further Civil or Administrative Action

31. The defendant acknowledges, understands, and agrees that the defendant has discussed with his attorney and understands that nothing contained in this agreement is meant to limit the rights and authority of the United States of America or any other state or local government to take further civil, administrative, or regulatory action against the defendant, including but not limited to any listing and debarment proceedings to restrict rights and opportunities of the defendant to contract with or receive assistance, loans, and benefits from United States government agencies.

### GENERAL MATTERS

32. The parties acknowledge, understand, and agree that this agreement does not require the government to take, or not to take, any particular position in any post-conviction motion or appeal.

33. The parties acknowledge, understand, and agree that this plea agreement will be filed and become part of the public record in this case.

34. The parties acknowledge, understand, and agree that the United States Attorney's office is free to notify any local, state, or federal agency of his conviction.

### Further Action by Internal Revenue Service

35. Nothing in this agreement shall be construed so as to limit the Internal Revenue Service in discharging its responsibilities in connection with the collection of any additional tax, interest, and penalties due from the defendant as a result of the defendant's conduct giving rise to the charges alleged in the information.

## EFFECT OF DEFENDANT'S BREACH OF PLEA AGREEMENT

36. The defendant acknowledges and understands if he violates any term of this agreement at any time, engages in any further criminal activity prior to sentencing, or fails to appear for sentencing, this agreement shall become null and void at the discretion of the government. The defendant further acknowledges and understands that the government's agreement to dismiss any charge is conditional upon final resolution of this matter. If this plea agreement is revoked or if the defendant's conviction ultimately is overturned, then the government retains the right to reinstate any and all dismissed charges and to file any and all charges which were not filed because of this agreement. The defendant hereby knowingly and voluntarily waives any defense based on the applicable statute of limitations for any charges filed against the defendant as a result of his breach of this agreement. The defendant understands, however, that the government may elect to proceed with the guilty plea and sentencing. If the defendant and his attorney have signed a proffer letter in connection with this case, then the defendant further acknowledges and understands that he continues to be subject to the terms of the proffer letter.

## VOLUNTARINESS OF DEFENDANT'S PLEA

37. The defendant acknowledges, understands, and agrees that he will plead guilty freely and voluntarily because he is in fact guilty. The defendant further acknowledges and agrees that no threats, promises, representations, or other inducements have been made, nor agreements reached, other than those set forth in this agreement, to induce the defendant to plead guilty.

16

## ACKNOWLEDGMENTS

I am the defendant. I am entering into this plea agreement freely and voluntarily. I am not now on or under the influence of any drug, medication, alcohol, or other intoxicant or depressant, whether or not prescribed by a physician, which would impair my ability to understand the terms and conditions of this agreement. My attorney has reviewed every part of this agreement with me and has advised me of the implications of the sentencing guidelines. I have discussed all aspects of this case with my attorney and I am satisfied that my attorney has provided effective assistance of counsel.

Date: 1/17/14

SUNDAY UWUBITI
Defendant

I am the defendant's attorney. I have carefully reviewed every part of this agreement with the defendant. To my knowledge, my client's decision to enter into this agreement is an informed and voluntary one.

Date: 1/17/14

FRANKLYN M. GIMBEL
Attorney for Defendant

For the United States of America:

Date: 1/30/14

JAMES L. SANTELLE
United States Attorney

Date: 1/30/2014

MATTHEW L. JACOBS
Assistant United States Attorney